Plaintiff sues to recover workmen's compensation. He alleges that in the regular discharge of his duties as a laborer in defendant's employ he lifted a heavy timber measuring six inches by eight inches and that the strain incident thereto produced a hernia of such character as to render him permanently and totally disabled to perform work of any reasonable character. Defendant denied all of the allegations of the petition save as to its corporate capacity and alleged domicile. However, the suit is really resisted upon two grounds, to-wit:
That the hernia which afflicts plaintiff is not the result of an accident experienced while in defendant's employ, and, alternatively, that he is not disabled therefrom.
Defendant appealed from a judgment for plaintiff awarding him compensation at the rate of $6.24 per week during the period of disability, not exceeding four hundred weeks, for $50 to cover medical expenses and for costs.
Plaintiff testified that at about the hour of 4 o'clock P.M. on May 17, 1938, while lifting freshly sawed timbers measuring six inches by eight inches and from eighteen feet to twenty-four feet long, from a table in the planer mill on to a carriage, he suddenly felt a hurting sensation in the lower portion of the right side of his abdomen; that he continued to handle these large timbers until all had been disposed of and then transferred to another planer where lighter timbers were being run through; that while thus engaged the pain became so intense (accompanied by nausea) that he called his brother, who was near by, to substitute for him; that he then sat down for awhile and thereafter performed light work until the quitting hour. There is no doubt that plaintiff did call his brother to relieve him at the time and place to which testified. The brother testified that plaintiff then informed him that he was hurting so badly he could not do the work he had been performing.
The saw mill did not run the day following the alleged accident but did operate the two days thereafter. Plaintiff reported for duty and worked both days, but he says he suffered all the while from the hernia. On the last of these days he went to and was examined by defendant's regular physician. Physical examination revealed a bulging in the lower right side of the abdomen near the groin which was diagnosed to be an incomplete inguinal hernia. Being advised of the nature of his ailment, plaintiff quit working at the mill. He says he advised the foreman of the doctor's diagnosis. The foreman was not produced as a witness by either side. He also testified that since leaving the mill he has not performed nor has he been able to perform any heavy manual labor; in fact, has done no work save light work for the WPA for three months; that he cannot do heavy work because of the pain and discomfort produced thereby in the region about the locus of the hernia.
There is no variance in the testimony of the two doctors who gave evidence in the case. Each says that while the hernia is *Page 608 
incomplete, heavy work will produce pain and that such work could easily cause the hernia to break through the ring and bring about serious consequences. Both physicians say that plaintiff is disabled to engage in heavy manual labor. He has followed the work of a saw mill hand and timber cutter for a livelihood practically all of his life. He has no capacity for work other than that which requires energetic physical exertion.
Excepting what his brother said on the subject, plaintiff has produced no testimony to support his own as regards the accident. A co-laborer did hear him address his brother and request him to work in his stead. There is no positive testimony to dispute plaintiff's version of the facts of the accident. The fact that co-workmen near by had no knowledge thereof does not go far to disprove that an accident occurred. Plaintiff at first did not know what had happened to him. He discovered the enlargement of the abdomen when he undressed to retire the following night.
Immediately prior to entering defendant's employment, plaintiff worked several months for a man by the name of Cuff. He sawed down trees and converted them into logs for saw mill use. This is admittedly hard labor. Only a few days intervened between the time he left Cuff's employment to the time he entered that of defendant. Testimony given by several co-laborers who worked daily with plaintiff, some of whom slept with him at night while working for Cuff, prove beyond serious question that at the time he had no signs of a hernia and never complained of pain or discomfort from such. He is shown to have been a strong man physically and to have performed well his duties as a laborer. These proven facts go far to establish plaintiff's contention that the hernia was acquired while in defendant's employ.
Another fact which supports plaintiff's contention is that he and his brother sought a physical examination by defendant's physician prior to entering its employ. The doctor did not examine them closely; did not have them remove their clothes. He asked both of them certain questions pertaining to their physical condition, the answers to which being satisfactory, a certificate of good health was issued to each. The doctor says he put these men on their honor and accepted their answers at face value. If the hernia had been in existence then, it is unlikely that plaintiff would have been willing to submit himself to a close physical examination, a condition precedent, he believed, to securing employment with defendant.
Three witnesses testified that they heard plaintiff say before entering defendant's employ that he had a "rupture" and one of them testified that plaintiff said he intended to make defendant pay for the hernia if he should enter its employ. These purported statements all occurred a year or more prior to the alleged accident. One of these witnesses testified that plaintiff said he received the hernia during the first world war while handling cross-ties. It so happens that when the world war ended plaintiff was about eleven years of age.
Plaintiff worked for Cuff and others after these alleged statements were made. It would be passing strange that he would have singled out defendant to mulct and wait so long to lay the foundation for such a course. The lower court evidently attached no probative weight to the testimony of these witnesses. Apparently their testimony was rejected.
Plaintiff's case has been made out by a very narrow margin. The testimony is not as conclusive in some respects as a court wishes to have before it when adjudicting controverted issues of the character herein involved. It is a border line case wherein the conclusions of the trial judge should be allowed the maximum of influence. He doubtless has personal acquaintance with all the parties who testified. This being true, his competency to pass on the credibility of the witnesses has superior advantages over ours. We are not warranted in reversing that which he did after mature deliberation.
In this court counsel filed a joint stipulation wherein our attention is called to the fact that the judgment appealed from does not fix the date plaintiff's disability, if any, had its inception, which would be the date from which compensation payments should be reckoned. It is agreed that such date is May 17, 1938.
For the reasons herein assigned and in keeping with said stipulation, the judgment appealed from is amended by inserting therein May 17, 1938, as the date of the beginning of plaintiff's disability and as the date from which payments of compensation shall be reckoned; and as thus amended, said judgment is affirmed with costs. *Page 655